W. M. MERRITT v. ATLANTIC COAST LINE RAILROAD.

(Filed 31 March, 1910.)

**Penalty Statutes—Interpretation—Railroads—"Jim Crow Car"— Separate Accommodations—Direction of Conductor.**

> When a railroad company has fully and in good faith complied with the statute requiring it to furnish equal and separate accommodations on its train for the white and colored races, no penalties thereunder may be recovered by reason of the conductor merely directing a few white passengers to take the coach set apart for the colored people, and under evidence establishing these facts defendant's motion for nonsuit should be granted. Revisal, secs. 2619, 2321, 2622.

CLARK, C. J., dissenting.

APPEAL from *Guion, J.,* at January Term, 1910, of SAMPSON.

Civil action to recover a penalty for violation of what is commonly called the Jim Crow car law, embodied in Revisal of 1905, secs. 2619 to 2622, inclusive. The following is the evidence of the plaintiff:

"On Wednesday morning, 29 December, 1908, we went to Ivanhoe, a station on defendant's railroad. There were four of us, all white, and we bought tickets at Ivanhoe for Tomahawk, the nearest station to our homes. We paid 25 cents for each ticket, and the distance was about ten miles. When the train came we started towards the steps of the white car. We got on steps of white car and started to go in white coach, and the conductor told us to go into the other car. We went in and found a few colored folks, and they told us we were in the wrong car. We then went out and started to go into the white coach, but the conductor told us to go back into the colored car. There was ample room for us in the white coach, but when the conductor told us to go into the other car we went. He didn't use any threats or do anything to make us go in, except to say, 'Go in that car,' pointing to the car for colored people with his hand. He did not use any force."

J. H. Boney testified for plaintiff: "I was with Merritt. All of us had tickets. We started to go up white steps, and con-

ductor said, 'Go on in the other car.' We then went into the colored car, and some negroes in there told us we were in the wrong car, and we started out to go into the white coach, when the conductor waved his hand and said, 'Go on back in the other car.' We went back. When the conductor came to take up our tickets I asked him why he put us in the colored car, and he said, 'You want to keep your baggage with you, don't you?' I said I usually kept it. My baggage was rafting gear, axe, etc., in a tow sack. There was plenty of room in the white car, and there was plenty of room in the colored car. The railroad had provided separate cars for the two races, but we are white men, and the conductor ordered us to go into the colored car. He did not cuss or abuse us, and did nothing except to tell us to go into the car for the colored race. There was a coach for the whites with plenty of room, but the conductor told us to ride in the colored car."

The plaintiff here rested, and the defendant moved for judgment as of nonsuit, under the Hinsdale Act. Motion overruled, and defendant excepted.

From a verdict and judgment for plaintiff the defendant appealed.

No counsel for plaintiff.
*F. R. Cooper* for defendant.

BROWN, J., after stating the case: We are of the opinion that the plaintiff is not entitled to recover the penalty announced by section 2622 of the Revisal for failure to provide separate cars.

Where the carrier has obeyed the law and provided separate cars for the white and colored passengers which afford equal accommodations, no statutory penalty is incurred if the individual passenger is directed by a train hand or conductor into the wrong car.

This is manifest from the language of the statutes. Omitting superfluities, section 2619 reads as follows: "All railroad companies shall provide separate but equal accommodations for the white and colored races on all trains carrying passengers.

"Such accommodations may be furnished by railroad companies either by separate passenger cars or by compartments in passenger cars, which shall be provided by the railroad under the supervision and direction of the Corporation Commission."

Section 2320 provides that the commission may exempt certain roads and trains. Section 2321 provides when the two races may be put in the same coach, and section 2622 imposes a penalty for failing to provide separate cars.

MERRITT *v.* RAILROAD.

Upon the testimony of the plaintiff it appears that the defendant had complied fully and in good faith with the statutes cited, and furnished equal and separate accommodations on its train for the white and colored races.

Assuming, as contended by plaintiff, that the conductor erred in showing plaintiff into the colored car, because he had his rafting gear with him, that does not alter the admitted fact that so far as the carrier is concerned it had complied in good faith with the law and provided separate cars and equal accommodations for the two races. That being so, no statutory penalty is incurred.

. That our construction is right is manifest from that portion of the law which provides that the separate cars. and accommodations, for failure to supply which the penalty is given, must be furnished by the carrier under the direction and supervision of the Corporation Commission.

As said by the Federal Court, the equipment is the required thing, the failure to furnish which brings on the penalty, and not the management of the equipment by the employees. *U. S. v. Ill. Cent. R. R.,* 156 Fed., 183. That was an action brought by the Government for the penalty imposed by the safety-appliance act of 2 March, 1893. The Circuit Court held that the penalties were incurred by a failure to furnish the appliances, and not because improperly managed by the company's employees after being furnished.

The motion to nonsuit is sustained.

Reversed and dismissed.

CLARK, C. J., *dissenting:* It is the inherent power of the people of this State to declare their public policy through enactments of the Legislature, unless that body is restrained by some provision of the Constitution of the State or of the United States. That is not the case with the requirement of separate cars for the two races, for such legislation, when it requires, as our statute does (Rev., 2619), "equal accommodations" for both races, has been held constitutional by both the State and Federal courts. The sole power and duty of the courts, therefore, is to so construe the law as to effectuate the intention of the Legislature.

The object of this statute was to provide separate accommodations for *all* white men, not for *some* white men. It is beyond controversy that on this occasion such accommodations were not "provided" for these four white men, but were denied to them. If there had been only one white man thus humiliated by being forced to ride, against his will, in the car "pro-

vided" for the other race, the statute was disregarded and the penalty incurred. The inmates of the colored car also had their rights violated by being forced to allow four white men to ride in that car contrary to law, and against their objection.

The bag of rafting gear should have been put in the baggage car. If it was not proper to admit it into the white car where these four men had a right to ride, it was far more improper to have it put in the colored car where these men were prohibited by the law to ride, for the statute requires "equal accommodations," and if the tackle was not proper for one car it was not proper for the other.

The conductor is in complete charge of the train. For the time being he is the *Alter Ego* of the company, its only visible and, indeed, sole representative. The company, it seems, did provide a car for some white men that day. But it did not provide for these four white men, when, through its representative, its conductor, it refused to let them ride therein and forced them to ride among the members of the other race, in the car which should have admitted only members of that race. The discrimination against them was all the more cruel when all other white men had a car provided for them. "Providing" a car for other white men was no benefit to these four white men, nor a compliance with the law, so far as they were concerned.

The statute is a delusion if the conductor can, acting for the company, exclude any white men he thinks proper and put them in the colored car. If he can, at will, require white men to ride in the colored car, he can at will permit colored men to ride in the white car. It would be equally as good a defense in such case to say, as in this, that there was a separate car "provided" for each race. If this is "providing" a car for each race, then the company, acting through its conductor, is supreme, and not the statute. But if the statute confers rights, the conductor cannot thus suspend or nullify it.

Whatever the company may have provided for other white men that day, it certainly did not provide room in the white car for these four white men, and thereby it incurred the penalty provided by the statute.

These were men in the humbler walks of life and laborers. But the statute is meant as much, if not more, for them than for others better dressed, perhaps, whom an arbitrary conductor would hardly dare, or might not be able, to force to ride with the colored people. The evidence is that these white men tried to go into the white car where there was plenty of room, but

the conductor ordered them into the other car. They had to obey. The colored men objected (as they had a right to do) to these white men riding in that car. They then again started into the white car and the conductor ordered them "to go back" and ride among the negroes. They refrained from any difficulty with him and have appealed to the courts of their State.

The conductor having denied them the right given them by the statute, they have asked that the courts, in this case, shall decide, once for all, that the guarantee to all white men, however humble, of the right to ride on the train among those of their own race, shall be enforced.

If the conductor can deny that right to these men and compel them to ride among negroes, any other conductor can arbitrarily compel any other white men at any other time to do the same. A law which depends for its suspension, or operation, upon the arbitrary will or humor of an individual is a nullity. This certainly was not the intent of the Legislature in passing this statute.

The provision that such cars shall be furnished "under the direction and supervision of · the Corporation Commission" is merely a repetition of the general law putting all matters concerning railroads, steamboats and telegraph and telephone companies under their general direction and supervision. It was never meant thereby that the Corporation Commission was empowered to repeal, suspend or set aside any express requirement, such as this, enjoined upon common carriers by a statute, and enforcible through the courts by a penalty. If they had exempted this road under Rev., 2620, the burden of proving the exemption was on the defendant, and there was no evidence to show it, nor is it even alleged. The statute was set aside by the defendant, through its conductor, and not by the Corporation Commission.

The penalty for violation of this requirement is given by Rev., 2622, to "*any passenger* * * * *who has been furnished accommodations on such railroad train or steamboat,* * * * *with a person of a different race,* in violation of law." The plaintiff has brought himself squarely within both the spirit and the terms of the statute, and he is entitled to recover, both on his own account and as a protection to all other white men who otherwise will be absolutely subject to the arbitrary conduct of any conductor who may choose to order them to ride among the negroes, as the conductor here did.

*Judge Guion* properly refused to nonsuit the plaintiff. The issue, submitted without objection, was, "Did the defendant fail

and refuse to furnish accommodation to the plaintiff in a compartment or car set apart and intended for the whites, as alleged in the complaint?"

The jury having answered "Yes," the judge rendered judgment for the penalty of $100, as provided by Rev., 2622.

In my judgment, it is not lawful in North Carolina for a railroad company, through its conductor, to compel white men to ride in the car provided for the colored race, especially under the facts of this case, when both the white men and the negroes objected to it and there was plenty of room in the car for whites. The only ground intimated is that they were laborers with a bag of tools; but the bag of tools, if objectionable, should have been sent to the baggage car, without humiliating the men by compelling them to ride with the negroes.